10-CV-05357-ORD

FILED _____ LODGED
_____ RECEIVED

APR 20 2011

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRENDA S. CORBELLO,

Plaintiff,

v.

DION MOORE, et al.,

Defendants,

v.

CNA, d/b/a CONTINENTAL
CASUALTY COMPANY,

Garnishee Defendant.

CASE NO. C10-5357BHS

ORDER GRANTING
GARNISHEE DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

This matter comes before the Court on Garnishee Defendant Continental Casualty Company's ("Continental")[1] motion for summary judgment (Dkt. 18). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants Continental's motion for summary judgment for the reasons stated herein.

---

[1] According to Continental, "CNA Insurance Companies" is a fleet name for a group of insurance companies which includes Continental. Dkt. 18 at 2 n.1. Neither "CNA" nor "CNA Insurance Companies" is a legal entity or a "doing business as" name for Continental. *Id.* Thus, Continental is the proper party in this action as it issued the insurance policy in question. *Id.*

ORDER - 1

# I. PROCEDURAL HISTORY

On April 9, 2010, Plaintiff Brenda S. Corbello ("Corbello") filed a writ of garnishment action against Dion Moore ("Moore") and Jane Doe Moore, d/b/a Lighthouse Financial Group; David E. Schatz ("Schatz") and Jane Doe Schatz, husband and wife, d/b/a D. Schatz Construction, Inc.; John A. Cochran ("Cochran") and Sandra Cochran, husband and wife; and CBIC (collectively "Defendants") and named Continental as the Garnishee.  Dkt. 1 at 5-7.  The garnishment action was filed to satisfy a judgment from an insurance policy issued by Continental to Cochran based on the judgment Corbello obtained against Cochran in a lawsuit captioned *Corbello v. Moore, et al,*, Case No. 08 2 07216 1 (Clark County, Wash. Super. Ct.).  Dkt. 19-6.  On May 20, 2010, Continental removed the action to this Court based on diversity jurisdiction under 18 U.S.C. § 1332.

On February 22, 2011, Continental filed a motion for summary judgment seeking a ruling from the Court that the insurance policy issued to Cochran excludes the underlying claim from coverage.  Dkt. 18.  On March 10, 2011, Corbello filed a response to Continental's motion (Dkt. 24) and a cross-motion for summary judgment seeking a ruling from the Court that Continental is collaterally estopped from claiming that the policy excludes the underlying claim from coverage (Dkt. 23).  On March 18, 2011, Continental replied to Corbello's response to its motion for summary judgment.  Dkt. 27.  On March 25, 2011, Continental responded to Corbello's cross-motion for summary judgment.  Dkt. 28.

# II. FACTUAL BACKGROUND

This case arises out of an underlying legal malpractice claim brought by Corbello against Cochran in state court.  *See* Dkt. 19-6.  Cochran is an attorney who represented Corbello, Moore, and Schatz in a business deal including the formation of Corbello Estates, LLC ("Corbello Estates").  *Id.*  After forming an attorney-client relationship with

ORDER - 2

Corbello, Moore, and Schatz, Cochran was offered and accepted a 25% share in Corbello Estates. *Id.* In deciding Continental's motion for summary judgment, the Court relies on the parties' stipulated facts including the findings of fact and conclusions of law issued by the state court in the underlying action. Dkt. 19. Because the parties have stipulated to the relevant facts, the Court will not recite them here.

## III. DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 253). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.   Corbello's Cross-Motion for Summary Judgment**

In addition to her opposition to Continental's motion for summary judgment, Corbello filed a cross-motion for summary judgment in which she contends that the state court's findings of fact, conclusions of law, and judgment in the underlying suit "are *res judicata* as to Cochran and that Continental is collaterally estopped to claim that coverage does not exist" over her claim. Dkt. 23. In response, Continental argues that the cross-motion for summary judgment filed March 10, 2011, should be stricken as untimely since it was filed after the February 23, 2011, dispositive motion deadline set by the Court's scheduling order (*see* Dkt. 16). Dkt. 28. Moreover, Continental maintains that the motion should be denied on its merits because the doctrines of res judicata and collateral estoppel do not entitle Corbello to garnish the policy proceeds as a matter of law. *Id.* As an initial matter, the Court notes that Corbello's cross-motion was not timely filed and therefore, could be stricken by the Court for failure to comply with the scheduling order. *See United States v. Vacante*, 71 F. Supp. 2d 992 (E.D. Cal. 2010) (stating that "[i]t is not an abuse of discretion for a Court to deny or strike a motion on the basis that it is untimely filed according to the timetable set by the scheduling order"). However, the Court has considered the motion and concludes that it should be denied on its merits.

### 1.    Res Judicata

Federal courts sitting in diversity jurisdiction apply the claim preclusion rules of the forum state in which the court sits unless the law of the forum state is incompatible with federal interests. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). Res judicata, or claim preclusion, bars litigation of any claims that were raised or could have been raised in the prior action. *Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). "Res judicata bars a subsequent action when a prior judgment concurs in identity with the subsequent action in four respects: '(1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made.'" *Feminist Women's Health Center v. Codispoti*, 63 F.3d 863, 867 (1995) (quoting *Rains v. State*, 100 Wn.2d 660, 663 (1983)). To determine whether the causes of action are identical, courts consider the following: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transaction or nucleus of facts." *Rains*, 100 Wn.2d at 664 (quotation marks and citations omitted).

### 2.    Collateral Estoppel

Similarly, a federal court sitting in diversity looks to state law in applying the doctrine of collateral estoppel. *Nw. Sea Farms, Inc. v. U.S. Army Corps of Eng'rs*, 931 F. Supp. 1515, 1522 (W.D. Wash. 1996). Collateral estoppel precludes only those issues actually litigated and necessarily determined in a prior action. *Shoemaker v. Bremerton*, 109 Wn.2d 504, 507-08 (1987). Four elements must be shown in order for collateral estoppel to apply: "(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the decision on the issue is asserted must have been a party to, or in privity with a party to, the prior litigation; and (4) application of the doctrine must not work an

1   injustice on the party against whom the doctrine is to be applied." *Nw. Sea Farms*, 931 F.

2   Supp. at 1522.

3        **3.      Court's Conclusion**

4        Here, Corbello has failed to show that res judicata or collateral estoppel applies to

5   entitle her to summary judgment in the current action. In her cross-motion for summary

6   judgment, Corbello merely mentions the doctrines of res judicata and collateral estoppel

7   but fails to list the elements of either doctrine, much less show how each applies to the

8   instant case. Regardless, the Court concludes that neither doctrine applies. First, res

9   judicata does not apply because there is no identity of claims in the two actions as there

10  was no claim involving insurance coverage of Cochran's legal malpractice brought in the

11  underlying state court action. *See East v. Fields*, 42 Wn.2d 924, 925-26 (1953) (holding

12  that "[t]he judgment is not conclusive as to the question of coverage of the policy in

13  question for the reason that the causes of action for tort liability and for indemnity

14  liability are separate and distinct"; thus, "the judgement fixing the tort liability of the

15  defendants in the main action is not *res judicata* of the indemnity liability of the insurance

16  company in the garnishment proceedings"). Second, although Continental concedes that

17  collateral estoppel precludes relitigating Cochran's liability for legal malpractice, the

18  doctrine does not preclude Continental from litigating the question of insurance coverage

19  because the two actions do not involve identical issues. That is, the issue of insurance

20  coverage of Cochran's claim was not litigated in the previous action. Accordingly, the

21  Court concludes that Corbello's motion for cross-summary judgment should be denied.

22  **C.      Continental's Motion for Summary Judgment**

23       In its motion for summary judgment, Continental argues that Cochran's

24  professional liability insurance policy excludes coverage for the underlying malpractice

25  claim because such claim fits within the policy's business enterprise exclusions. Dkt. 18.

26

27

28

1      **1.    Standards for Interpretation of Insurance Policies**

2      In Washington, the determination of insurance coverage is a two-step process.

3 *Diamaco, Inc. v. Aetna Cas. & Sur.*, 97 Wn. App. 335, 337 (1999).  The party seeking to

4 establish coverage bears the initial burden to prove that coverage under the policy has

5 been triggered.  *Id.*  If coverage is triggered, the insurer then bears the burden to prove

6 that the loss is specifically excluded by the policy language.  *Id.*  If coverage is not

7 triggered, the court does not proceed to address any exclusions from coverage.  *Western*

8 *Nat'l Assur. v. Hecker*, 43 Wn. App. 816, 823 n.2 (1986).

9      Interpretation of insurance policies is a question of law, and courts construe

10 insurance policies as a whole, giving force and effect to each clause in the policy.

11 *American Star Ins. Co. v. Grice*, 121 Wn.2d 869, 874 (1993), *opinion supplemented by*

12 123 Wn.2d 131 (1994).  Courts interpret insurance policies "as an average insurance

13 purchaser would understand them and give undefined terms in these contracts their plain,

14 ordinary, and popular meaning." *Daley v. Allstate Ins. Co.*, 135 Wn.2d 777, 784 (1998).

15 If the policy language is clear and unambiguous, the court will not modify the policy or

16 create an ambiguity. *American Star*, 121 Wn.2d at 874.

17

18      In addition, while policy "exclusions should be strictly construed against the

19 drafter, a strict application should not trump the plain, clear language of an exclusion

20 such that a strained or forced construction results." *Quadrant Corp. v. Am. States Ins.*

21 *Co.*, 154 Wn. 2d 165, 172 (2005).  Moreover, "the expectations of the insured cannot

22 override the plain language of the contract." *Id.*

23      **2.    Cochran's Insurance Policy**

24      Here, the insurance policy issued to Cochran by Continental included two

25 exclusions which Continental characterizes as business enterprise exclusions.  The

26 exclusions, contained in sections F and H, state that the policy will not apply to:

27

28

F.     any claim based on or arising out of an Insured's capacity as
1.     a former, existing or prospective officer, director, shareholder, partner or manager of a business enterprise or charitable organization (if the above are not named in the Declarations); or
2.     a former, existing or prospective officer, director, shareholder, partner manager, or trustee of a fund or trust which is a pension, welfare, profit-sharing, mutual or investment fund or trust; or a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto or any other similar state or local law;

except that this exclusion shall not apply to a claim based on or arising out of an Insured's capacity as a member, director or officer of any professional legal association, its governing board or any of its committees.

\* \* \*

H.     any claim based on or arising out of legal services performed for any existing or prospective partnership, organization, corporation, company or other business enterprise (including the ownership, maintenance or care of any property in connection therewith), not named in the Declarations, if at the time of the act or omission giving rise to such claim:
1.     any Insured controlled, operate or managed or intended to control, operate or manage such enterprise; or
2.     any Insured was:
     a.     a partner or employee of such enterprise, or
     b.     more than a 10% shareholder or a sole proprietor of such enterprise, or
3.     Insureds cumulatively were more than a 10% shareholder of such enterprise,

except that this exclusion shall not apply to any claim based on or arising out of legal services to any professional legal association, its governing board or any of its committees. As used in this exclusion, the word "partner" shall be deemed to include members of limited liability companies or limited liability partnerships.

Dkt. 19-1 at 10 (emphasis omitted).

## 3.    Relevant Findings of Fact and Conclusions of Law

The relevant findings of fact and conclusions of law issued by the state court in the underlying action include the following:

16.    John A. Cochran, acting as an attorney, met with Brenda S. Corbello, David E. Schatz, and Dion Moore, and did not obtain from any of the individuals a retainer agreement, agreement waiving any potential conflict of interest, or an agreement permitting him to confer with each individual and reveal confidences that may be disclosed at a meeting of the

ORDER - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

parties. John A. Cochran admitted he had breached the standard of care of an attorney under the laws of the states of Washington and Oregon.

17.    Prior to meeting with Dion Moore, David E. Schatz and Brenda S. Corbello, John A. Cochran had established an attorney-client relationship with Dion Moore and David E. Schatz in forming a limited liability company for the purpose of developing real property in or near Astoria, Oregon.

18.    John A. Cochran was not a member of the limited liability company for the purpose .of developing the Astoria, Oregon real property in which Dion Moore and David E. Schatz were invested.

19.    After establishing an attorney-client relationship with Dion Moore, David E. Schatz and Brenda S. Corbello, Dion Moore offered John A. Cochran an opportunity to be a part of the development that Dion Moore was putting together for the development of real property at Idahna, Oregon, called Detroit Lake, with the investment monies of Brenda S. Corbello.

20.    An attorney-client relationship existed between Brenda S. Corbello and John A. Cochran before John A. Cochran entered into any business relationship with any of the parties. John A. Cochran failed in his standard of care as it relates to representing Brenda S. Corbello by not advising her of the attorney-client relationship, that he was not her attorney, and by not providing any waivers for meeting with all three, Brenda S. Corbello, Dion Moore and David E. Schatz.

21.    After the initial meeting, John A. Cochran was requested to draft documents for the investment involving Brenda S. Corbello in the form of an operating agreement for a limited liability company, a promissory note for the funds to be invested by Brenda S. Corbello, and the security documents necessary to secure the investment monies being provided by Brenda S. Corbello.

22.    On July 23, 2008, John A. Cochran gave to Dion Moore drafts of an Operating Agreement for Corbello Estates, LLC, a limited liability company, formed under the laws of the state of Oregon, for the purpose of developing real property in the state of Oregon, and also a Promissory Note dated July 24, 2008, in the amount of $380,000, that was intended to be secured by real property. The Operating Agreement and the Promissory Note referred to each document by reference and were all a part of the same transaction. The Operating Agreement and Promissory Note provide for attorney fees and further provide that Brenda S. Corbello should receive interest at the rate of 9% per annum from July 24, 2008.

23.    On July 24, 2008, Dion Moore, acting as the financial advisor for Brenda S. Corbello and the facilitator for the members of Corbello Estates, LLC, had David E. Schatz, Brenda S. Corbello and himself sign the Operating Agreement and the Promissory Note.

24.    Sometime after July 24, 2008, John A. Cochran, on or about July 27, 2008, signed the Operating Agreement.

* * *

26.    The Operating Agreement of Corbello Estates, LLC, signed on July 24, 2008, provided that members would be as follows: Dion Moore, 35% ownership; Brenda S. Corbello, 20% ownership; David E. Schatz, 20% ownership; and John A. Cochran, 25% ownership.

* * *

ORDER - 9

7.     John A. Cochran is an attorney at law, license to practice in the state of Washington and the state of Oregon.  The actions of John A. Cochran were in violation of the Rule of Professional Conduct for the state of Washington and the state of Oregon as it applies to conflicts of interest and obtaining the necessary waivers provided for under RPC 1.4, 1.6, 1.7 and 1.8 of the Rules for Professional Conduct in the state of Washington, and the similar rules of the state of Oregon.

8.     The actions of John A. Cochran violated the Rules of Professional  Conduct and he breached the duty of care owed to Brenda S. Corbello to avoid a conflict of interest, and this occurred on or before July 23, 2008, and he thereafter breached his duty and responsibilities owed to Brenda S. Corbello and other prospective members of Corbello Estates, LLC, on or after July 24, 2008, in that he failed to provide the necessary documentation and security agreed to by the individuals forming Corbello Estates, LLC. The breach of duty and standard of care (negligence) was under the laws of Washington and Oregon.

9.     John A. Cochran did not enter into a business transaction or contemplate entering into a business transaction with Brenda S. Corbello, Dion Moore, David E. Schatz or Corbello Estates, LLC, until after the initial breach of the standard of care creating a conflict of interest that ultimately resulted in damages to Brenda S. Corbello.

Dkt. 19-6 at 5-7, 13.

### 4.     Parties' Contentions

"The purpose of the business exclusion is predominantly to avoid collusive suits or the shifting of a business loss to a malpractice carrier." *Fireman's Fund Ins. Co. v. Puget Sound Escrow Closers, Inc.*, 96 Wn. App. 227, 238 (1999) (quotation marks and citations omitted). "In cases where those concerns are not present, the courts have interpreted this exclusion narrowly." *Id.*

Here, Continental maintains that the purpose of the business exclusions contained in Cochran's policy was to avoid the shifting of Cochran's business loss to Continental, his malpractice carrier. Dkt. 18. Continental contends that Cochran's legal malpractice in representing Corbello occurred before, during, and after the formation of his business relationship with Corbello Estates. *Id.* Therefore, Continental argues that the underlying legal malpractice claim arose out of Cochran's capacity as a former, existing, or prospective shareholder in Corbello Estates and out of legal services he performed for Corbello Estates, a business enterprise of which he was more than a 10% shareholder. *Id.*

ORDER - 10

1    Thus, according to Continental, under the business exclusions contained in Cochran's

2    policy, Corbello's malpractice claim is excluded from coverage. *Id.*

3         In her opposition to Continental's motion for summary judgment, Corbello argues

4    that the business exclusions contained in Cochran's policy do not preclude coverage of

5    her underlying legal malpractice claim because Cochran's attorney-client relationship

6    with her was established, and his malpractice began, before he became a shareholder in

7    Corbello Estates. Dkt. 24.

8         In its reply, Continental maintains that the fact that Cochran's attorney-client

9    relationship and malpractice began before he was actually offered shares in Corbello

10   Estates does not preclude the application of the insurance policy's business exclusions to

11   Corbello's legal malpractice claim because the claim is also based on Cochran's actions

12   or omissions occurring after he became a shareholder in Corbello Estates. Dkt. 27.

13

14        **5.    Court's Conclusion**

15        Having reviewed the relevant facts in this case, including the findings of fact and

16   conclusions of law issued by the state court in the underlying action, as well as the

17   language of the business exclusions contained in Cochran's insurance policy, the Court

18   concludes that Corbello's malpractice claim is precluded from coverage by sections F and

19   H of the policy. Section F states that the policy does not cover "any claim based on or

20   arising out of [Cochran's] capacity as . . . a former, existing or prospective . . .

21   shareholder." Dkt. 19-1 at 10. Section H states that the policy does not cover "any claim

22   based on or arising out of legal services performed for any existing or prospective . . .

23   business enterprise . . . if at the time of the act or omission giving rise to such claim"

24   Cochran was "more than a 10% shareholder" of such enterprise. *Id.*

25        According to Corbello, the findings of fact and conclusions of law issued by the

26   state court in the underlying action prohibit Continental's argument that the business

27   exclusions in Cochran's policy preclude coverage of the legal malpractice claim because

28

1   Corbello's attorney-client relationship, and initial breach of the standard of care in failing

2   to advise the parties of potential conflicts of interest, occurred before Cochran entered

3   into, or contemplated entering into, a business transaction with her and the other parties.

4   Dkt. 24. However, while Cochran's initial malpractice occurred before he entered into

5   the business transaction and became a shareholder in Corbello Estates, the Court

6   concludes that he continued to commit such malpractice by again failing to advise the

7   parties of potential conflicts of interest after he became a shareholder and, as the state

8   court concluded, by failing to provide the necessary documentation and security agreed to

9   by the parties in forming Corbello Estates (Dkt. 19-6 at 13 ¶ 8). Dkt. 27. Therefore,

10  because the state court relied at least in part on Cochran's failures that undisputedly

11  occurred after he became a shareholder in Corbello Estates in concluding that he was

12  liable to Corbello for malpractice, this Court may not separate out Cochran's actions that

13  occurred before he became a shareholder and hold Continental, as Cochran's insurer,

14  responsible for such actions.

15          The district court's opinion in *Coregis Ins. Co. v. Larocca*, 80 F. Supp. 2d 452,

16  459 (1999), is instructive in holding that the business exclusions in the defendant's

17  insurance policy applied to the malpractice claims because such claims arose out of the

18  attorney's role as both a lawyer to and officer in a business. Specifically, the court held

19  that "[d]istinguishing between the roles [the attorney] was playing at different moments in

20  his dealings . . . could prove impossible. The broad, inclusive language of the exclusions,

21  however, makes the drawing of such distinctions unnecessary." *Id.* Here, as in *Coregis*,

22  Cochran wore different hats at different times in his dealings with Corbello and Corbello

23  Estates. Because Corbello's malpractice claim encompasses Cochran's dealings with

24  Corbello and the parties involved with Corbello Estates, both before and after his role as a

25  shareholder in Corbello Estates began, section F of Cochran's policy excludes coverage

26  of Corbello's claim. In other words, the Court concludes that Corbello's malpractice

1    claim is excluded because it arises out of Cochran's capacity as a prospective and existing

2    shareholder in Corbello Estates.

3          In addition, section H of Cochran's policy also excludes coverage of Corbello's

4    claim because such claim includes Corbello's failure to provide the necessary

5    documentation and security agreed to by the parties in forming Corbello Estates, which

6    occurred after he became a shareholder in Corbello Estates.  Thus, the Court concludes

7    that Corbello's claim is excluded as it arises out of legal services performed for Corbello

8    Estates, an existing business enterprise, which, at the time of the act or omission giving

9    rise to such claim, Cochran was more than a 10% shareholder of such enterprise.

10   Therefore, the Court concludes that Continental's motion should be granted.

### IV. ORDER

11

12         Therefore, it is hereby **ORDERED** that Continental's motion for summary

13   judgment (Dkt. 18) is **GRANTED** and Corbello's motion for cross-summary judgment

14   (Dkt. 23) is **DENIED** for the reasons stated herein.  This action is hereby **DISMISSED**

15   **with prejudice.**

16

17         DATED this 20th day of April, 2011.

18

19

20                                              BENJAMIN H. SETTLE
                                                United States District Judge
21

22

23

24

25

26

27

28

ORDER - 13